

# THE ATTORNEY GENERAL
## OF TEXAS
### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

May 20, 1952

Hon. J. W. Edgar
Commissioner of Education
Texas Education Agency
Austin, Texas

Dear Sir:

Opinion No. V-1458

Re:  Method to determine the
     amount assigned to be
     raised by a county-line
     school district toward
     financing its foundation
     school program.

        We refer to your request for an opinion
of this office concerning the method used by the Texas
Education Agency to determine the amount assigned or
charged to a county-line school district under the
Foundation School Program Act (Art. 2922-16, Sec. 5,
V.C.S.) toward financing its foundation school program.

        You state that the Megargel Independent
School District, a county-line district comprising
adjoining territory of parts of Archer, Baylor, Throck-
morton, and Young Counties, has questioned your method
of determining the local fund assignment for such dis-
trict, and contends that it is entitled to an adjust-
ment on such assignment under the adjustment proviso
of Section 5 of Article 2922-16.

        Article 2922-16, V.C.S., provides in part
as follows:

        "Sec. 2.  The sum of the amounts to be
    charged annually against the local school
    districts of the State toward such Founda-
    tion School Program shall be . . .
    ($45,000,000).  The State Commissioner of
    Education, subject to the approval of the
    State Board of Education, shall assign each
    school district according to its taxpaying
    ability, its proportionate part of such
    . . . ($45,000,000) to be raised locally and
    applied towards the financing of its minimum
    foundation school program.

        "Sec. 4.  The State Commissioner of
    Education shall calculate and determine
    the total sum of local funds that the school
    districts of a county shall be assigned to
    contribute . . . by multiplying . . .

($45,000,000) by the economic index /see
Sec. 3/ determined for each county. The
product shall be regarded as the local funds
available in each respective county toward
the support of the Foundation School Pro-
gram, and shall be used in calculating the
portion of said amount which shall be as-
signed to each school district in the coun-
ty.

"Sec. 5.  The State Commissioner of Edu-
cation shall determine the amount of local
funds to be charged to each school district
and used therein toward the support of the
Foundation School Program, which amount
shall be calculated as follows:

"Divide the state and county assessed
valuation of all property in the county sub-
ject to school district taxation for the next
preceding school year into the State and
county assessed valuation of the district
for the next preceding school year, find-
ing the district's percentage of the county
valuation.  Multiply the district's percent-
age of the county valuation by the amount
of funds assigned to all of the districts
in the county.  The product shall be the
amount of local funds that the district shall
be assigned to raise.  . . .

"   . . .

"The sum of the amounts assigned to the
several portions of a county-line school dis-
trict shall be the amount assigned to be
raised by such district toward the financ-
ing of its foundation school program."

But Section 5, supra, further provides
for an adjustment of the amount assigned to any dis-
trict, calculated in accordance with the prescribed
formula, when the amount that the district can raise
from its statutory maximum local maintenance tax
is less than the amount that is assigned to the school
district.  This adjustment proviso reads as follows:

"Provided that if the revenue that
would be derived from the legal maximum

local maintenance school tax is less than the amount that is assigned to a school district . . ., and if such property valuation is not less than said property is valued for State and county purposes, such lesser amount shall be the amount assigned to be raised by such school district."

In the determination of the 1951-52 local fund assignment for the Megargel Independent District (a county-line school district), the State Commissioner outlines as below the method followed in arriving at $17,052.22 to be its proper assignment.

State and County values for 1950 certified to by County Assessor as follows:

| | |
|---|---|
| Archer County | $13,889,610 |
| Baylor County | 8,744,760 |
| Throckmorton County | 11,536,170 |
| Young County | 16,434,470 |

State and County values for that part of the Megargel district situated in:

| | |
|---|---|
| Archer County | $969,790 |
| Baylor County | 477,113 |
| Throckmorton County | 43,220 |
| Young County | 68,105 |

Total State and County values for the Megargel District $1,558,228

Economic Index figure for each County for the 1951-52 school year:

| | |
|---|---|
| Archer County | .00414 |
| Baylor County | .00133 |
| Throckmorton County | .00177 |
| Young County | .00258 |

Per cent of State and County values of the territory of the Megargel district in:

| | |
|---|---|
| Archer County | 6.982% |
| Baylor County | 5.456% |
| Throckmorton County | .375% |
| Young County | .414% |

Local Fund Assignment for each County:

| | | |
|---|---|---|
| Archer County | .00414 x $45,000,000 = | $186,300.00 |
| Baylor County | .00133 x 45,000,000 = | 59,850.00 |
| Throckmorton County | .00177 x 45,000,000 = | 79,650.00 |
| Young County | .00258 x 45,000,000 = | 116,100.00 |

Amount of Local Fund Assignment of each
County assigned to Megargel district:

| | | | | |
|---|---|---|---|---|
| Archer County | .06982 x | $186,300.00 = | $13,007.46 |
| Baylor County | .05456 x | 59,850.00 = | 3,265.42 |
| Throckmorton County | .00375 x | 79,650.00 = | 298.69 |
| Young County | .00414 x | 116,100.00 = | 480.65 |

Total Local Funds Assigned to
Megargel District                                   $17,052.22

With these figures and facts, you have sub-
mitted the following questions:

"1.  Is our method of determining the
local fund assignment for the Megargel County
Line Independent School District correct?

"2.  If the above question is answered
in the affirmative, is the Megargel County
Line Independent School District entitled to
an adjustment under the above-quoted adjust-
ment provision of the statute?"

The calculations evidence that the Commis-
sioner has determined first the assignments of the four
county portions situated in the Megargel county-line
district.  These four assignments are based on State
and county valuations certified to the Commissioner
by the County Tax Assessor-Collector for the county
wherein the area and taxable property rests.  The
county-line provision of Section 5 requires that the
amounts assigned to the several portions of a county-
line school district shall be the amount assigned to
be raised by such district.

In answer to your first question, it is our
opinion that the method employed in determining the
local fund assignment for the Megargel County-Line
Independent School District is correct.  The Commis-
sioner has properly determined the statutory formula
assignment of the Megargel district by adding the
amounts assigned to the several portions of the county-
line district.

The use of the adjustment proviso in Section 5
does not enter into the computations to determine the
formula-prescribed assignment or charge against a school
district.  The adjustment proviso has application only

after the assignment of the district (whether a county-line district or a district lying wholly within one county) has been determined in accordance with the statutory formula.  If the revenue which would be derived from the legal maximum local maintenance school tax is less than the amount which is assigned to a school district under the statutory formula, the adjustment proviso requires that such lesser amount shall be the amount assigned to be raised if the district valuation is not less than the State and county valuation.

Relating to matters concerning your second question, we quote from your letter as follows:

"In determining whether a district was entitled to an adjustment under the above-quoted adjustment provision of the statute, we multiplied the total State and county valuation of the district by the legal maximum maintenance tax rate for the district.  In determining the legal maximum maintenance tax rate of the district, we determined what tax rate (on school district valuations, rather than State and county) was necessary to service the bonded indebtedness, and subtracted such amount from the maximum tax rate authorized by law whether or not the maximum rate was levied by the district.

"For example, a tax of $0.2484 on the $100 valuation (school district) was needed to service the bonded indebtedness of the Megargel district.  The maximum tax rate authorized by law for the Megargel district is $1.50 on the $100 valuation.  Thus, the legal maximum maintenance tax rate for the district is $1.2516 on the $100 valuation.  Multiplying this amount times the total assessed valuation (State and county) for the district, we determined that the district could raise $19,502.78, which was more than the local fund assignment of $17,052.22 and did not entitle the district to an adjustment under the above-quoted statutory provision."

The Megargel County-Line Independent School District has its own district tax assessor, as permitted

in Article 2791, V.C.S. In round figures, the properties in the Megargel district are assessed for independent school district tax purposes at approximately $2,500,000; for State and county purposes, at $1,500,000.

In Article 2784e, V.C.S., the Legislature has fixed the legal maximum maintenance tax which an independent district like the Megargel district may levy. Generally, Article 2784e permits the voting and levying of a maximum local tax of $1.50 on the $100 valuation to cover both bond and maintenance (school operation) purposes. However, not exceeding 50¢ of that $1.50 maximum rate may be voted for bond purposes. Thus, if a district has no bonded indebtedness to service, its maximum tax for maintenance (operational) purposes could be $1.50.

But the State Commissioner found that the Megargel district has a bonded indebtedness, and that it would take $0.2484 of a maximum $1.50 tax rate based on the district's valuations to service the bonds for the 1951-52 period. Therefore, for the purpose of concluding whether the Megargel district was entitled to a benefit permitted under the adjustment proviso of Section 5 of Article 2922-16, he determined that the taxpaying ability of the district as a whole was $1.2516 on the $100 valuations of the district, because only $1.2516 on said $100 valuations could be raised and used by the district for maintenance, or for the support of its foundation school program. This maximum maintenance rate when applied to State and county valuations for the district as a whole shows that the Megargel district could raise for its foundation school program $19,502.78. This amount being what the district could legally raise for maintenance purposes on the basis of the State and county valuations, and it being a sum greater than $17,052.22, the local fund assessment determined for the Megargel district, the Commissioner found that the district is not entitled to an adjustment of its assessment under the adjustment proviso of Article 2922-16.

The method of determining the amount which a school district when considered as a single unit could raise by levying the maximum local maintenance tax rate has not been questioned, and the propriety of the method used by the Commissioner has not been given study in this opinion.

The Megargel district's objection to this method of ascertaining its eligibility for an adjustment is stated in the following excerpt from your letter:

"The Megargel County-Line Independent School District contends that each portion of the district situated in a separate county should be considered independently. In other words, a district might get credit under the adjustment provision of the law in one county and not be eligible for such credit in one of the other counties; that is, the assignment might be less in one of the counties than the exception would provide. Therefore, you would assign the lesser amount. In the other county, however, the reverse would be true and the exception would be approved for that portion of the district."

The purpose of the proviso is to except certain districts from the provision for a local fund assignment determined in accordance with the statutory formula. It is clearly designed to afford relief to a "school district," not to a segment or portion of a school district, for it embraces tax revenues of an entire district and has no concern with areas. We agree with your interpretation that the adjustment proviso applies to the district as a whole. Accordingly, it is proper to consider the total valuations for the entire district rather than the portion of the valuations in each county separately in determining whether a county-line district is entitled to an adjustment in its local fund assignment.

## SUMMARY

In computing the revenue which would be derived from the legal maximum local maintenance school tax for a county-line school district in order to determine whether

the district is entitled to an adjustment in its local fund assignment under Paragraph 3 of Section 5, Article 2922-16, V.C.S. (Foundation School Program Act), the State Commissioner of Education should consider the combined valuations of the district as a whole and should grant or refuse an adjustment on that basis rather than on the basis of whether each portion situated in a separate county, if considered independently, would be entitled to an adjustment.

Yours very truly,

PRICE DANIEL
Attorney General

APPROVED:

J. C. Davis, Jr.
County Affairs Division

Mary K. Wall
Reviewing Assistant

Charles D. Mathews
First Assistant

CEO:mh

By Chester E. Ollison

Chester E. Ollison
Assistant